UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TWIN SISTERS GUN CLUB, an Unincorporated Association, and THOMAS BOCK, | No. 2:17-cv-01526-MCE-GGH |
| Plaintiffs, | **MEMORANDUM AND ORDER** |
| v. | |
| WILLIAM F. EMLEN, MINH C. TRAN, COUNTY OF SOLANO, and DOES 1-10, | |
| Defendant. | |

Plaintiffs Thomas Bock and Twin Sisters Gun Club brought this suit against

Solano County, William F. Emlen, Solano County's Director of Resource Management,

and Minh C. Tran, County Counsel for Napa County ("Defendants" when referred to

collectively) alleging due process violations arising from Defendants' denial of Plaintiffs'

application for a business license for the Twin Sisters Gun Club. Plaintiffs seek relief

under 42 U.S.C. § 1983, as well as peremptory writs of mandate under California Code

of Civil Procedure §§ 1085 and 1094.5. Plaintiffs' writ claims ask this Court to set aside

adverse decisions regarding Plaintiffs' business license application and to reconsider

their application in accordance with relevant sections of the Solano County Code.

///

Defendants now move to dismiss the suit on three grounds pursuant to both Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).[1]  First, they contend that this Court should decline to exercise supplemental jurisdiction over the state mandamus claims.  Second, Defendants argue Plaintiffs have failed to state a claim under § 1983.  Finally, they argue that Defendants Tran and Emlen are entitled to either quasi-judicial or qualified immunity.[2]

**BACKGROUND**

The land at issue in this proceeding is a 160-acre parcel in a rural part of Solano County (the "Property").  Plaintiff Thomas Bock owns an interest in the Property, which has allegedly been used since at least 1951 for, among other things, target shooting.  A portion of the Property has historically been referred to as Twin Sisters Park and Twin Sisters Gun Club, the latter of which is also a Plaintiff (the "Gun Club").  Although the Property is rural, population growth in the county has resulted in an increase in the number of individuals residing in relatively close proximity to the Property.

In or around 2011, Defendant Solano County (the "County") allegedly received noise complaints regarding the Property.  After receiving additional noise-related complaints in 2015, County allegedly began a formal investigation of allegations that the Gun Club was operating without permits, and in October of 2015, concluded that the Gun Club was a legal non-conforming use.[3]  It is unclear who allegedly made this determination, but by noting that Defendant William Emlen, the County's Director of Resource Management, had power under Solano County Code § 28.118(a) to delegate

---

[1] All further references to "Rule' or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Because oral argument was not of material assistance, the Court ordered this matter submitted on the briefs.  E.D. Cal. Local Rule 230(g).

[3] A non-conforming use is the term used to describe a use of property that does not comply with existing zoning laws, but is nonetheless allowed to occur because it had been lawfully established on such land property before the zoning law was enacted.

authority to make non-conforming use decisions and that Emlen delegated such authority to Planning Manager Michael Yankovich. Plaintiffs appear to suggest that if the determination was not in fact made by Emlen, it was made by Yankovich with Emlen's knowledge and approval. Pls.' Comp. at ¶¶ 18–19.

After this alleged initial non-conforming use determination, someone from the County Sheriff's Office allegedly instructed Plaintiff Bock to obtain a business license for the Gun Club, and in January 2016, Plaintiff Bock submitted an application. The basis for the application, according to Plaintiffs, was the alleged determination made by Defendant County in October of 2015 that the Gun Club was a legal non-conforming use.

On June 21, 2016, Plaintiff Bock received a letter from the County stating that he could not get a business license unless he provided evidence showing that the shooting range had been continuously operated since the non-conformity began. The letter also stated that a future determination of whether a non-conforming use existed would depend on whether the shooting range's scope of operations was currently the same as when it began. According to Plaintiffs, the Property first began operating as a shooting range in 1951 and the date the non-conformity began (i.e., the date a permit became required to operate the shooting range) was December 30, 1958.

Plaintiffs claim they disputed the County's position that the outcome of a non-conforming use determination turned on the scope of operations, but nonetheless stated they were open to working with the County to come to an agreement as to what the scope of operations should be going forward. Pls.' Comp. at ¶¶ 32–33. According to Plaintiffs, however, the Department of Resource Management chose not to work with Plaintiffs on determining what an appropriate scope for the operation would be and instead simply denied their business license application on August 26, 2016. Id. at 33. Defendant Emlen signed the denial. According to Plaintiffs, the reason the County gave for its denial was that Plaintiff Bock had failed to meet his evidentiary burden of proving the prior existence of a non-conforming use and that such use was still within the same

3

scope as it had been when the non-conforming use began.  The County then demanded that the Gun Club cease its operations.  The Gun Club complied and has remained effectively closed ever since.

Although Solano County Code § 28.114(g) requires that a zoning clearance take place prior to issuance of  a business license, Plaintiffs allege, and Defendants do not appear to dispute, that Defendant County never completed that clearance.  Pls.' Comp. at ¶ 25; Defs.' Mem. Supp. Mot. to Dism, ECF No. 9-1, 3:5–7.

Plaintiff Bock timely appealed the denial on September 12, 2016.  Defendant Minh C. Tran, County Counsel of Napa, acted as a hearing officer and conducted the appeal hearing ("Hearing").  At the Hearing, Defendant County was represented by Deputy County Counsel Davina Smith.  In her brief to Defendant Tran, Smith claimed that the Gun Club's non-conforming use status had been abandoned.  During the Hearing, she also claimed that the earlier non-conforming use determination relied on by Plaintiffs was invalid because it had not been made by Defendant Emlen.  Although it is not entirely clear from the record, Plaintiffs appear to suggest that to support her contention Smith introduced a declaration from Yankovich.  Pls.' Comp. at ¶¶ 49–50.  Plaintiffs note, however, that Yankovich was not available for examination at the Hearing.  They also allege that his declaration does not address one way or the other whether Defendant Emlen was involved in the initial alleged non-conforming use determination, and Plaintiffs contend that Emlen was in fact involved.  Smith also disputed whether a prior non-conforming use determination had been made at all.  Ultimately, Defendant Tran issued a written order on April 24, 2017, upholding the denial of the business license applications.  The order, according to Plaintiffs, did not address the evidence Plaintiffs had submitted concerning the alleged earlier non-conforming use determination made by Defendants in October 2015.

Plaintiffs subsequently filed their instant complaint on July 21, 2017, asserting three causes of action: (1) civil rights violations under 42 U.S.C. § 1983; (2) violations of California Code of Civil Procedure § 1094.5; and (3) violations of California Code of Civil

4

Procedure § 1085.  The first two causes of action named the County, Emlen, and Tran as defendants.  Plaintiffs' last claim, however, was asserted only against the County and Emlen.  Plaintiffs contend this Court has federal question jurisdiction over the § 1983 claim and supplemental jurisdiction over the state law claims.  Defendants disagree, arguing that this Court does not have supplemental jurisdiction over the state law claims on grounds that federal courts either cannot assert jurisdiction over state law mandamus claims, or, at the very least, should, in their discretion, decline to assert jurisdiction over such claims.  Accordingly, Defendants move to dismiss the state law claims for lack of jurisdiction pursuant to Rule 12(b)(1).  In addition, Defendants argue that Plaintiffs have failed to adequately plead a § 1983 claim as to all three defendants under Rule 12(b)(6).  Finally, as to both Emlen and Tran, Defendants contend they are entitled to quasi-judicial immunity, or, alternatively, qualified immunity.  For the following reasons, Defendants' Motion to Dismiss is GRANTED as to Defendant Tran and DENIED as to Defendants County of Solano and Emlen.

## STANDARD

### A.        Motion To Dismiss Under Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, and are presumptively without jurisdiction over civil actions.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  The burden of establishing the contrary rests upon the party asserting jurisdiction.  Id.  Because subject matter jurisdiction involves a court's power to hear a case, it can never be forfeited or waived.  United States v. Cotton, 535 U.S. 625, 630 (2002).  Accordingly, lack of subject matter jurisdiction may be raised by either party at any point during the litigation, through a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1).  Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006); see also Int'l Union of Operating Eng'rs v. Cnty. of Plumas, 559 F.3d 1041, 1043-44 (9th Cir. 2009).  Lack of subject matter jurisdiction may also be raised by the district court sua sponte.

5

Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999). Indeed, "courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." Id.; see Fed. R. Civ. P. 12(h)(3) (requiring the court to dismiss the action if subject matter jurisdiction is lacking).

There are two types of motions to dismiss for lack of subject matter jurisdiction: a facial attack, and a factual attack. Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp., 594 F.2d 730, 733 (9th Cir. 1979). Thus, a party may either make an attack on the allegations of jurisdiction contained in the nonmoving party's complaint, or may challenge the existence of subject matter jurisdiction in fact, despite the formal sufficiency of the pleadings. Id.

When a party makes a facial attack on a complaint, the attack is unaccompanied by supporting evidence, and it challenges jurisdiction based solely on the pleadings. Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). If the motion to dismiss constitutes a facial attack, the Court must consider the factual allegations of the complaint to be true, and determine whether they establish subject matter jurisdiction. Savage v. Glendale High Union Sch. Dist. No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003). In the case of a facial attack, the motion to dismiss is granted only if the nonmoving party fails to allege an element necessary for subject matter jurisdiction. Id. However, in the case of a factual attack, district courts "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." Safe Air for Everyone, 373 F.3d at 1039.

In the case of a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations." Thornill, 594 F.2d at 733 (internal citation omitted). The party opposing the motion has the burden of proving that subject matter jurisdiction does exist, and must present any necessary evidence to satisfy this burden. St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989). If the plaintiff's allegations of jurisdictional facts are challenged by the adversary in the appropriate manner, the plaintiff cannot rest on the mere assertion that factual issues may exist. Trentacosta v. Frontier Pac. Aircraft Ind.,

6

1  Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (quoting Exch. Nat'l Bank of Chi. v. Touche
2  Ross & Co., 544 F.2d 1126, 1131 (2d Cir. 1976)).  Furthermore, the district court may
3  review any evidence necessary, including affidavits and testimony, in order to determine
4  whether subject matter jurisdiction exists.  McCarthy v. United States, 850 F.2d 558, 560
5  (9th Cir. 1988); Thornhill, 594 F.2d at 733.  If the nonmoving party fails to meet its
6  burden and the court determines that it lacks subject matter jurisdiction, the court must
7  dismiss the action.  Fed. R. Civ. P. 12(h)(3).

8  **B.      Motion To Dismiss Under Rule 12(b)(6)**

9  On a motion to dismiss for failure to state a claim under Federal Rule of Civil
10  Procedure 12(b)(6), all allegations of material fact must be accepted as true and
11  construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.
12  Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) requires only "a short and plain
13  statement of the claim showing that the pleader is entitled to relief" in order to "give the
14  defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell
15  Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,
16  47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require
17  detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of
18  his entitlement to relief requires more than labels and conclusions, and a formulaic
19  recitation of the elements of a cause of action will not do."  Id. (internal citations and
20  quotations omitted).  A court is not required to accept as true a "legal conclusion
21  couched as a factual allegation."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009)
22  (quoting Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a
23  right to relief above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles
24  Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)
25  (stating
26  that the pleading must contain something more than "a statement of facts that merely
27  creates a suspicion [of] a legally cognizable right of action.")).

28  Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

7

assertion, of entitlement to relief." <u>Twombly</u>, 550 U.S. at 556 n.3 (internal citations and quotations omitted). Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." <u>Id.</u> (citing 5 Charles Alan Wright & Arthur R. Miller, <u>supra</u>, at § 1202). A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 570. If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." <u>Id.</u> However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" <u>Id.</u> at 556 (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)).

### C.    Leave To Amend

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend. Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the <u>Foman</u> factors as those to be considered when deciding whether to grant leave to amend). Not all of these factors merit equal weight. Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." <u>Id.</u> (citing <u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d 183, 185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." <u>Intri-Plex Techs. v. Crest Group, Inc.</u>, 499 F.3d 1048, 1056 (9th Cir. 2007) (citing <u>In re Daou Sys., Inc.</u>, 411 F.3d 1006, 1013 (9th Cir. 2005); <u>Ascon Props., Inc. v. Mobil Oil Co.</u>, 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

///

///

**ANALYSIS**

Because this is a court of limited jurisdiction, the Court will first address whether or not supplemental jurisdiction is proper. The Court will then consider whether Plaintiffs have alleged facts sufficient to state a claim under § 1983. Finally, the Court will assess whether Tran and Emlen are entitled to immunity.

A.    **Supplemental Jurisdiction**

Federal district courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. In addition, under 28 U.S.C. § 1367(a), courts shall have supplemental jurisdiction over state law claims if they are a part of the "same case or controversy" as the claims over which the court has original jurisdiction. One claim is a part of the "same case or controversy" as another claim when they both share a "common nucleus of operative fact." Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1174 (9th Cir. 2002) (citing United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966)).

It is true that "pendent [or supplemental] jurisdiction is a doctrine of discretion." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966). But after Gibbs, Congress codified that discretion in § 1367(c). Exec. Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist. Of Cal., 24 F.3d 1545, 1555–56 (9th Cir. 1994) (overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp., 533 F.3d 1087 (9th Cir. 2008) ("it is clear that Congress intended section 1367(c) to provide the exclusive means by which supplemental jurisdiction can be declined by a court."). Pursuant to § 1367(c), this Court may decline to exercise supplemental jurisdiction over state claims when:

> (1) the claim raises a novel or complex issue of State law[;]
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction[;]
>
> (3) the district court has dismissed all claims over which it has original jurisdiction[;] or

9

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). In deciding whether to exercise such discretion, courts "should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988). Ultimately, the doctrine is a flexible one, "designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." Id.

With this framework in mind, we turn to the instant case. Plaintiffs argue that the "same case or controversy" element is satisfied because all of their claims stem from the "County's land use decision making vis-à-vis Plaintiffs' shooting range," and that those facts therefore constitute a "common nucleus of operative facts." Pls.' Opp. to Defs.' Mot. to Dism. 8:12–16 (ECF No. 12). Although it is not entirely clear from Defendants' papers, Defendants do not appear to contest that the "same case or controversy" element is met. Instead, they focus on whether the Court should decline to exercise supplemental jurisdiction, Defs.' Mot. to Dism. 6:3–5 (ECF No. 9-1), a position that implicitly assumes the grounds for supplemental jurisdiction exist. In any case, because all of Plaintiffs' claims arise from the same set of facts, and in light of Defendants' apparent concession on that point, the Court finds that the "same case or controversy" element, and, therefore, § 1367(a), is satisfied.

The question, then, is whether one of the exceptions under § 1367(c) justifies dismissing Plaintiffs' state law claims. Since the Court does not dismiss all the claims over which it has original jurisdiction below, section 1367(c)(3), is inapplicable. The remaining sections, §§ 1367(c)(1), (2), and (4), are discussed in turn below.

**1.    Section 1367(c)(1): Are the State Law Claims Novel or Complex?**

Plaintiffs contend their claims are neither novel nor complex. The statutes Plaintiffs rely on, California Code of Civil Procedure §§ 1085 and 1094.5, are, according

10

to Plaintiffs, "commonly relied upon and litigated." Pls.' Opp. to Defs.' Mot. to Dism., ECF No. 12, 9:17–19. Although Plaintiffs cite no authority for this proposition, Defendants do not argue it is incorrect. Moreover, with respect to § 1094.5, the Northern District, in Wesner v. Cty of Napa, 2009 WL 650274 (N.D. Cal. Mar. 11, 2009), specifically found that claims under that statute do not raise novel or complex issues of state law. Id. at *3. Because both §§ 1085 and 1094.5 have been the subject of extensive litigation and are cited frequently, the Court does not believe they present novel or complex issues of state law.

### 2. Section 1367(c)(2): Do the State Law Claims Predominate over the 1983 Claims?

When "state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be . . . left for resolution to state tribunals." Gibbs, 383 U.S. at 726–27. "Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed." Id. at 727.

In terms of proof, Plaintiffs' claims are nearly identical. Proving Plaintiffs' § 1983 claim will almost certainly prove the allegations necessary to support Plaintiff's state-law claims. This overlap indicates that the federal claim is not merely an appendage to the state claims. On the contrary, the claims are so interwoven that it cannot be said that the state law claims here substantially predominate over the federal claims.

### 3. Section 1367(c)(4): Is this an Exceptional Case in Which There Are Compelling Reasons To Decline Jurisdiction?

According to the Supreme Court, the exceptional circumstances referred to in § 1367(c)(4) "include considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 174 (1997) (quoting Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996). Of these, only one is even arguable here: federal-state relations.

Defendants' argument against exercising supplemental jurisdiction is that bringing

11

mandamus claims rooted in state law alongside a federal claim constitutes an exceptional case in which there are compelling reasons to decline jurisdiction. To that end, Defendants rely on Clemes v. Del Norte Cty. Unified Sch. Distr., 843 F. Supp. 583 (N.D. Cal. 1994). In Clemes, the court declined to exercise jurisdiction over the plaintiff's request for a writ of mandamus to review a state administrative agency's decision. Id. at 598. The court reasoned the writ of mandamus sought was "a state remedy, not a federal remedy," and that it was "uniquely in the interest and domain of state courts." Id. According to Defendants, this holding controls the outcome here. The Court disagrees.

The Court acknowledges that principles of comity have lead some courts to deny altogether the federal district courts' ability to exercise supplemental jurisdiction over California law-based mandamus claims. See Hill v. Cty. of Sacramento, 466 Fed. Appx. 577, 579 (9th Cir. 2012) (holding that section 1085 of the California Code of Civil Procedure "authorizes only state courts to issue writs of mandate."); Layton v. Knipp, 2013 WL 5348153 (E.D. Cal. Sep. 23, 2013) ("Federal district courts are without power to issue mandamus to direct state courts, state judicial officers, or other state officials in the performance of their duties.). Nonetheless, the parties agree that "[a] grant of supplemental jurisdiction of a California mandamus action is not prohibited." Fresno Unified Sch. Dist. v. K.U. ex rel. A.D. U., 980 F. Supp. 2d 1160, 1184 (E.D. Cal. 2013).

In addition, other case law directs this Court to an outcome different than that found in Clemes. In Wesner, 2009 WL 650274 at *1, plaintiffs and defendant county had entered into a stipulated judgment in a state court proceeding regarding a nuisance issue that plaintiffs claimed resulted in a vested right on their part to use their property. The defendant subsequently posted a new notice of nuisance for the same violations that were at issue in the earlier proceeding, and although the defendant held a hearing on the new notice, the plaintiffs claimed they did not have a meaningful opportunity to present their case. Id. After concluding that the plaintiff's federal-state claims arose out of the same case or controversy the court addressed § 1367(c). As to the defendant county's argument, based on Clemes, that state mandamus claims are exceptional

circumstances under § 1367(c)(4), the Northern District noted:

> However, three years later, in <u>Chicago</u>, the United States Supreme Court noted that "there is nothing in the text of § 1367(a) that indicates an exception to supplemental jurisdiction for claims that require on-the-record review of a state or local administrative determination." Further, "the statute confers supplemental jurisdiction over 'all other claims' in the same case or controversy as a federal question, without reference to the nature of the review." Thus, federal jurisdiction may encompass review of state and local administrative decisions.

<u>Wesner</u>, 2009 WL 650274 at *3 (internal citation omitted) (emphasis in the original).

Here, Defendants' argument is virtually identical to that posited by the defendants in <u>Wesner</u>. This Court agrees with the Northern District's analysis on the matter and therefore will therefore invoke supplemental jurisdiction.[4]

**B.     Sufficiency of the Pleadings**

To state a claim under § 1983 against a municipal entity, a plaintiff must allege (1) a policy or custom that when executed (2) inflicts the (3) injury the government is responsible for. <u>Monell v. Dep't of Soc. Serv. of City of New York</u>, 436 U.S. 658, 694 (1978). Such policy or custom may be made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy. <u>Id.</u> Alternatively, a cognizable claim may also lie where "the injury was caused or ratified by an individual with 'final policy-making authority.'" <u>Chudacoff v. Univ. Med. Ctr. S. Nev.</u>, 649 F.3d 1143, 1151 (9th Cir. 2011) (quoting <u>Villegas v. Gilroy Garlic Festival Ass'n</u>, 541 F.3d 950, 964 (9th Cir. 2008)). In either instance, a municipality cannot be held liable solely because it employs a tortfeasor; simple respondeat superior alone will not suffice. <u>Monell</u>, 436 U.S at 691. Instead, municipalities can only be held liable when "action pursuant to official municipal policy . . . caused a constitutional tort." <u>Id.</u>

---

[4] The Ninth Circuit's decision in <u>Jensen v. Cty. of Sonoma</u>, 2010 WL 2330284 (N.D. Cal. Jun. 4, 2010) is also instructive. In that case, the district court had specifically relied on <u>Wesner</u> in deciding to exercise supplemental jurisdiction over a California Code of Civil Procedure § 1094.5 claim where it had original jurisdiction over the plaintiff's 1983 claims. <u>See Jensen v. Cty. of Sonoma</u>, 2010 WL 2330284 (N.D. Cal. Jun. 4, 2010). Although the Ninth Circuit addressed other issues on appeal, in affirming the district court's decision, the Ninth Circuit implicitly approved of its reasoning on the supplemental jurisdiction issue.

1    Merely alleging a random act or isolated instance of misconduct is not enough to

2   establish custom.  Navarro v. Block, 72 F.3d 712 (9th Cir. 1995).  As to pleading policy,

3   however, "no one has ever doubted . . . that a municipality may be liable under § 1983

4   for a single decision by its properly constituted legislative body—whether or not that

5   body had taken similar action in the past or intended to do so in the future—because

6   even a single decision by such a body unquestionably constitutes an act of official

7   government policy."  Pembaur v. City of Cincinnati, 475 U.S. 469, 480 (1986).

8   Nonetheless, in the event a plaintiff pleads only a single instance of misconduct, liability

9   inures only where the decision-maker possesses final authority to establish the alleged

10   policy.  Id. at 481.

11    Defendants argue that Plaintiffs have failed to state facts sufficient to constitute

12   viable § 1983 claims against any of the parties they have named as defendants in this

13   lawsuit.  As to the County and Emlen, Plaintiffs argue that they had "a policy by which it

14   allows its department heads to both delegate decision-making authority as to the

15   existence of a nonconforming use while nonetheless allowing the department heads to

16   have unfettered discretion to retroactively invalidate decisions made via the delegation of

17   authority."  Pls.' Comp. ¶ 53.  Defendants contend Plaintiffs fail to allege specific facts

18   sufficient to support the allegation.  Defs.' Mem. Supp. Mot. to Dism., ECF No. 9-1, 9:22–

19   23.

20    It is true that alleging legal conclusions or couching legal conclusions as factual

21   allegations is insufficient to survive a motion to dismiss.  Iqbal, 129 S. Ct. at 1950.

22   Nonetheless, Plaintiffs need not allege detailed facts.  Here, as evidence of this alleged

23   policy, Plaintiffs have alleged that Emlen, as the County's official responsible for non-

24   conforming use determinations, participated in or knew or reasonably should have

25   known that the earlier alleged non-conforming use determination occurred, and that he

26   subsequently disregarded it.  Pls.' Comp. at ¶¶ 35, 48, 51.  This is enough to state a

27   cognizable claim against both Emlen and the County.[5]

28   _____

[5] The Court finds below that Defendant Tran is entitled to quasi-judicial immunity. Therefore, it is

1    Defendants also attack Plaintiffs' "policy" allegations by claiming Plaintiffs failed to

2    plead a qualifying "custom."   These two concepts, however, cannot be conflated.   As

3    stated above, pleading custom requires more than alleging a single random act, but

4    pleading policy does not as long as the alleged decision-maker possesses final authority

5    to make the alleged policy.  As indicated above, Defendant Emlen, as the Director of the

6    County's Department of Resource Management, has the authority to make

7    nonconforming use determinations under Solano County Code 28.118(a).  Pls.' Opp. to

8    Mot. to Dism., ECF No. 12, 18:6–11.  Accordingly, Defendant Emlen is a decision-maker

9    for the purposes of Monell.  The remaining question is whether Plaintiffs have

10   satisfactorily pled facts sufficient to establish the policy, and as stated above, the Court

11   finds that they have.

12   Defendants also argue that Plaintiffs, by acknowledging they received a hearing,

13   contradict their claim that their due process rights were violated.  This argument is easily

14   disposed of because Plaintiffs do not base their due process claim on the lack of a

15   hearing.  Rather, Plaintiffs claim the hearing they received was legally meaningless.

16   Those allegations are sufficient to withstand the current motion under Ass'n for

17   Los Angeles Deputy Sherrifs, 648 F.3d at 995 ("A meaningless hearing is no hearing at

18   all, and does not satisfy the requirements of procedural due process.").

19   Defendants next contend that Plaintiffs have failed to plead facts sufficient to

20   establish a causal connection between the alleged policy and the constitutional injury.

21   But the crux of Defendants' argument on this point is, again, that Plaintiffs did receive a

22   hearing at which they were allowed to submit evidence concerning the original

23   nonconforming use determination.  Moreover, Plaintiffs' complaint does plead facts

24   sufficient to establish a causal connection.  Plaintiffs allege that "Defendants adopted a

25   policy that nonconforming use determinations made via an express or implied delegation

26   of authority can be repudiated by the Director of Resource Management without prior

27   notice, hearing, or explanation," and that such policy, regardless of the hearing that was

28   not necessary to discuss whether Plaintiffs otherwise could have stated a § 1983 claim against Tran.

held, resulted in the loss of a valuable property right in the nonconforming use allegedly already granted. Pls.' Comp. ¶¶ 58–60. If the Court accepts the Complaint's allegations as true, as it must, and construes them in the light most favorable to Plaintiffs, it cannot conclude they are lacking. Plaintiffs have alleged facts sufficient to state a non-speculative, plausible right to relief under § 1983 and Monell.[6]

## C.    Immunity

### 1.    Quasi-judicial Immunity

"The Supreme Court has long recognized 'the need for absolute immunity to protect judges from lawsuits claiming that their decisions had been tainted by improper motives.'" Buckles v. King Cty., 191 F.3d 1127, 1133 (9th Cir. 1999) (quoting Butz v. Economou, 428 U.S. 478, 508 (1978)). Here, absolute immunity is not at issue because this case does not involve allegations against an actual judge. Absolute immunity, however, can be extended to other officials when they "perform functions analogous to those performed by judges." Id. This variant on absolute immunity is known as quasi-judicial immunity. To determine whether an official's function is sufficiently comparable to that of a judge, courts are to consider the following: (1) whether there was an adversarial proceeding; (2) whether there is a decision-maker insulated from political influence; (3) whether the decisions made are based on evidence submitted by the parties; and (4) whether there is a decision provided to the parties on all of the issues of fact and law. Id. at 1134.

With respect to Defendant Tran, all four elements are present. Tran, acting as a hearing officer, conducted a hearing on February 17, 2017. He was, presumably, a decision-maker insulated from political influence, and both parties were allowed to submit evidence. Finally, Tran issued written findings upholding the County's denial of Plaintiffs' business license application. Accordingly, Tran is entitled to quasi-judicial immunity.

---

[6] Having concluded that Plaintiffs have sufficiently pled a policy that violates § 1983 under Monell, the Court need not address Plaintiffs' argument that they also sufficiently pled a custom.

///

Plaintiffs nonetheless take the position that Tran's immunity extends only to relief that Plaintiffs are not seeking. That is, according to Plaintiffs, even if Tran is entitled to quasi-judicial immunity, that immunity does not bar injunctive or declaratory relief, which is the only relief Plaintiffs seek from him. Plaintiff cites to Mullis v. U.S. Bankr. Court for Dist. Of Nev., 828 F.2d 1385, 1391 (9th Cir. 1987) (citing Pulliam v. Allen, 466 U.S. 522 (1984) for this proposition. The Court is not persuaded.

Congress effectively overruled Pulliam, and, therefore, Mullis, on this point in 1996 when it amended 42 U.S.C.A § 1988 to read: "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." In light of the amended version of § 1988, it is clear that absolute judicial immunity extends not only to claims for damages but to actions for equitable relief as well. By its very nature, quasi-judicial immunity is an extension of absolute judicial immunity where the function of a technically non-judicial government official is sufficiently comparable to that of a judicial officer to warrant such extension. Accordingly, quasi-judicial immunity also extends beyond monetary damages to claims for equitable relief, and Tran is entitled to quasi-judicial immunity as to all claims.[7]

Defendants' argument with respect to Emlen, however, is not well taken. The entirety of their argument is that "[b]ecause defendant Emlen is also alleged to have been involved in the decision-making process, he too is entitled to such immunity." Defs.' Mem. Supp. Mot. to Dismiss (ECF No. 9-1) 15:5–6. It is not entirely clear whether Defendants refer to Emlen's role as a decision-maker with respect to the original non-conforming use determination or the more recent business license denial. Defendants nonetheless fail to address the Butz factors as they apply to Emlen. That alone is enough to dispense with the unexplained argument and conclude that Emlen is not

_____

[7] That Defendant Tran is entitled to immunity and therefore dismissed from this case does affect or change the Court's ruling with respect to the applicability of 1367(c)(3)

17

entitled to quasi-judicial immunity.

But even if that were not the case, the Butz factors point to a different result for Emlen than they did for Tran. Emlen's role in making the non-conforming use determination and in the subsequent business license denial, to the extent he was involved in either, is distinguishable from functions typically performed by judges. There were no adversarial hearings and the parties did not submit evidence. It is also not clear that Emlen was insulated from political influence, and, while Emlen may have issued some sort of written decision, just how comparable that decision was to a judicial opinion remains unclear. The combined weight of the first three Butz factors, each of which favors finding no quasi-judicial immunity, nonetheless outweighs the last factor to the extent it might favor finding such immunity. And, as Plaintiffs point out, there is precedent for denying county officials quasi-judicial immunity in relatively similar circumstances. Mesquite Grove Chapel v. DeBonis, 633 F. Appx. 906 (9th Cir. 2015). For all these reasons, Emlen is not entitled to quasi-judicial immunity.

### 2. Qualified Immunity

Defendants also claim that Defendant Emlen is entitled to qualified immunity.[8] Qualified or "good faith" immunity shields government officials from suits for civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct. Reichle v. Howards, 566 U.S. 658, 654 (2012). In other words, the court must determine (1) whether the plaintiff has sufficiently alleged that an official's conduct violated a constitutional right; and (2) whether that right was clearly established at the time of the alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 232 (2009). Only if both are answered in the affirmative can the Court deny qualified immunity to an official, and it is in the Court's discretion to decide which issue to address first. Id. at 236.

Plaintiffs' primary argument against qualified immunity for Defendant Emlen is that

---

[8] Having concluded that Tran is entitled to quasi-judicial immunity, the Court need not address Defendants' argument that he was also entitled to qualified immunity.

18

qualified immunity only immunizes a government official from a suit for money damages. Because Plaintiffs are seeking declaratory and injunctive relief against Emlen, they correctly contend he is not entitled to qualified immunity. See Hydrick v. Hunter, 669 F.3d 937, 939–940 (9th Cir. 2012) ("Qualified immunity is only immunity from a suit for money damages, and does not provide immunity from a suit seeking declaratory or injunctive relief."). On this basis, the Court is satisfied that Emlen is therefore not entitled to qualified immunity. But, as discussed below, even if the Court were not satisfied on those grounds, Emlen would still not be entitled to qualified immunity under Reichle.

> **a.**      **Was the right alleged to be violated clearly established at the time of the alleged misconduct?**

One of the two prongs Reichle directs courts to consider is whether the right that was allegedly violated was clearly established such that a reasonable person in the defendant's shoes would know that he or she was violating the right. Reichle, 566 U.S. at 654. It requires no citation to authority to know that the owner of a legal non-conforming use has a valuable right. Indeed, once an action is prohibited in a certain area, the right to continue such activity in contravention of the prohibition is more valuable than the same freedom was before the prohibition began. Here, Plaintiffs allege that Emlen disregarded Plaintiffs' previously obtained non-conforming use determination when it denied Plaintiffs' business license application. Defendants contest whether the previous non-conforming use determination was even made.

Assuming for Rule 12(b)(6) purposes that the previous non-conforming use determination had been made, it is clear that Plaintiffs had some right in the continuance of that legal non-conforming use. Indeed, Solano County Code § 28.114(F) only provides for termination of a non-conforming use when the operation thereof ceases, presumably at the owner's choice, for a continuous six months. Moreover, California courts have acknowledged the particular importance of "the strictest adherence to principles of due process," when "it is clear revocation of a use permit could have the effect of putting the licensee completely out of business." Consequently, "whenever

19

1    alternative remedies can achieve the same goal, . . . these avenues ought to be pursued

2    if feasible." Bauer v. City of San Diego, 75 Cal. App. 4th 1281, 1294–95 (1999).  In light

3    of the Solano County Code and Bauer, it is clear that Defendants' power to reverse a

4    non-conforming use determination, once such a determination is issued, becomes

5    limited.  This is a less than precise analysis, but in determining whether the alleged right

6    is "clearly established" for qualified immunity purposes, the right need not have been

7    previously decided in a case directly on point.  Aschcroft v. al-Kidd, 563 U.S. 731, 740

8    (2011).  Ultimately, the Court need only be satisfied that the potential "contours of the

9    right [to continue operating a legal non-conforming use without its illegal revocation] are

10   sufficiently clear that a reasonable official [in Defendants' shoes] would have understood

11   that what he or she was doing violated that right."  Reichle, 566 U.S. at 665.  The Court

12   believes that Plaintiffs' arguments here fall within those parameters.

13          In addition, under Solano County Code § 28.114(g), a zoning clearance must be

14   issued by the Director of Resource Management prior to the issuance of a business

15   license.  This statute offers an additional basis for finding that the "clearly established"

16   element is satisfied because Plaintiffs allege that Emlen failed to conduct a zoning

17   clearance before he denied Plaintiffs application for a business license.  Under either

18   analysis, then, the rights Plaintiffs allege were violated were "clearly established."

19                       **b.       Have Plaintiffs sufficiently stated that a clearly
                                    established right has been violated?**
20

21          The second factor Reichle directs courts to consider is whether the Plaintiffs have

22   sufficiently stated a violation of a constitutional right by a public official.  Reichle,

23   566 U.S. at 654.  Plaintiffs allege that Emlen participated in, or at the very least knew

24   about, the  County's alleged October 2015 finding that Plaintiffs' Gun Club was a legal

25   non-conforming use, and that despite such participation or knowledge, the County and

26   Emlen denied Plaintiffs' business license application without completing a zoning

27   clearance as required by Solano County Code § 28.114(g).  Pls.' Comp. at ¶¶ 35, 48.

28   Those contentions essentially boil down to two alleged violations: that Defendants

                                              20

illegally reversed their prior non-conforming use determination; and that Defendants failed to comply with Solano County Code § 28.114(g).

Defendants argue these allegations are insufficient to state a claim for the violation of Plaintiffs' constitutional rights. In support of this contention, Defendants regurgitate many of the arguments they made earlier in their brief. First, they argue that the County had the right to determine land uses in its jurisdiction. Second, Defendants argue that there was due process because there was a process. The first contention is true but incomplete. Defendants are authorized to make land use decisions in their jurisdiction, but they are only authorized to do so subject to the laws governing land use decisions in their jurisdiction. Here, Plaintiffs clearly allege that Defendants acted in contravention of such authorization when they failed to conduct a zoning clearance pursuant to Solano County Code § 28.114(g) before issuing the denial of Plaintiffs' business license application. As for the second contention, as the Court stated above, Plaintiffs are not arguing there was no process, but that the process followed was deficient.

In light of the Court's obligation at this stage of the litigation to accept as true and construe in Plaintiffs' favor all the material allegations of fact, the Court simply cannot conclude that Plaintiffs have failed to sufficiently allege a violation of a constitutional right. Indeed, the Court already decided above that Plaintiffs' allegations, for the purposes of determining whether Plaintiffs had stated a § 1983 claim under Rule 12(b)(6), were sufficient. The same analysis applies for purposes of determining whether Emlen is entitled to qualified immunity. Assuming Plaintiffs had obtained the earlier non-conforming use status, Plaintiffs possessed a valuable right that could not be withdrawn without due process, and they allege that Defendants violated that right when they later refused to honor that decision. Additionally, under § 28.114(g) Emlen was required to conduct a zoning clearance prior to making a non-conforming use determination, and Plaintiffs allege Defendants did not. Plaintiffs have thus sufficiently pled a violation of rights that were clearly established such that a reasonable

government official in Defendants' shoes would have understood that his or her conduct violated the rights. Having answered both questions in the affirmative, the Court consequently holds that Emlen is not entitled to qualified immunity.

**CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss (ECF No. 9) is GRANTED as to Defendant Tran and DENIED as to Defendants County of Solano and Emlen. No leave to amend will be permitted as to Plaintiffs' claims against Defendant Tran inasmuch as the Court does not believe the shortcomings of those claims can be rectified through amendment.

IT IS SO ORDERED.

Dated: March 14, 2018

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE